(No. 6794— )

GLEN SMITH, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF MENTAL HEALTH, Respondent.

*Opinion filed November 12, 1974.*

LAND OF LINCOLN LEGAL ASSISTANCE FOUNDATION, INC., by JOSEPH R. BARTYLAK, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

In this tort action, claimant seeks payment for damages to his automobile caused by an inmate mental patient of Alton State Hospital who, in making an escape from the hospital, forcibly removed the claimant from his parked car, drove it away, and damaged the car so badly that the estimated cost of repairs exceeded the car's value.

Claimant charges that the respondent was negligent in failing to exercise sufficient restrictive control over the patient, Will Henry Ellis, which would have prevented the occurrence that resulted in claimant's loss.

The material facts in this case are not in substantial dispute. On January 11, 1972, claimant was the owner of a 1966 Buick automobile which was in good condition. At about 2:45 in the afternoon on that date, claimant went to the Alton State Hospital to pick up his wife, who was employed there, at the hospital. He parked his car along a driveway next to one of the buildings where he usually picked up his wife. As claimant was seated waiting for his wife, with his windows rolled down, a mental patient named Willy Ellis approached his car and demanded that he be taken to East St. Louis. Claimant refused. The patient grabbed claimant around the neck, pulled him out of the car, got in the car and drove it away. Claimant reported the theft to the Security Office at Alton State Hospital. No one witnessed the incident between claimant and the mental patient.

A fellow employee took the claimant and his wife from the Alton State Hospital to the Alton police station. On the way there, claimant saw his car sitting on College Avenue in Alton. It was pulled off of the concrete surface of the street onto some brick siding. The claimant, his wife, and his wife's friend saw the mental patient, Willy Ellis, walking toward the State Hospital on College Avenue. The car was headed toward Alton. Claimant testified that he could not see any physical damage to the *outside* of his car, but that there was oil and anti-freeze "all out in the front of the car".

The car would not start, and claimant had the car towed by Paul Bruns Towing Service to Bruns garage at

a cost of $22.50. Bruns made an estimate of repair in the total sum of $854.80.

On cross-examination, claimant conceded that there were signs on the Alton State Hospital grounds telling visitors to keep their cars locked, but that the signs said to do so "when the car *was unattended*".

Claimant testified that he disposed of the damaged car by selling it to Russell Swarringin for the price of $100, and said that he had purchased the car about a year before for the sum of $1,300.

Claimant testified that someone "at the State level" authorized him to dispose of the car, but he did not know who it was nor how long after the incident he was told that he could sell the car, but he estimated "It was over a month".

Paul Bruns, owner of the garage that gave claimant the estimated cost of repairs, said that the car was previously in good condition. After the incident involved, Bruns examined the automobile and found that it had a "rod thrown through the side of the motor". Bruns testified that, in his opinion, the car had been driven at a high rate of speed and that the engine was ruined.

The State's witness, Melba King, a social worker and a caseworker at the Alton State Hospital, testified that she was familiar with the record of Mr. Ellis, the patient who had accosted the claimant, and that she had studied his record. Ellis had an alcohol problem. She said that when Ellis drank, sometimes he would be impulsive and "do things". She testified that she did not know whether Ellis had a violent temper problem when he was not drinking, and said there was no place on the Alton State Hospital grounds that alcoholic beverages could be obtained. She admitted that Ellis had left the Alton State

Hospital on occasions other than the one in question, but there was no violence recorded as being associated with Ellis' elopement on other occasions. Mrs. King testified that Alton was not a security institution; that it was basically a hospital, not for violent inmates, and they had an open door policy.

On cross-examination of Mrs. King, claimant's counsel established that on October 22, 1971, Ellis had grabbed one of the workers and began pushing her inside a dorm. On October 25, 1971, there was a notation in Ellis' file that he had struck another patient because the other patient would not let him have a cigarette. On November 11, there was a notation in Ellis' records that he kicked out a piece of a chair for no apparent reason. Further notations indicated that on November 19, 1971, Ellis began a fight when in line for his morning meal. On December 19, 1971, the security officer in Ellis' ward said that Ellis had been rifling visitors' cars, and that security officer demanded that Ellis be kept in the ward. The caseworker further testified, that she knew that Ellis had been involved in problems with the police at various times when he had been discharged from Alton State Hosiptal. She conceded that patients admitted to Alton State Hospital are usually admitted on the grounds that they are dangerous to themselves or others.

The respondent called the man who had purchased claimant's car to testify as to the damage of claimant's car. Swarringin testified that he had repaired the vehicle for $280.00, doing the repair work himself, and that "it worked fine" after that. The car was subsequently stolen from Swarringin and destroyed. The insurance paid for the loss, was $760.00. We do not find this evidence to be necessarily in conflict with claimant's contention as to

the cost of having the car repaired by an expert mechanic, which Swarringin admitted that he was not.

Claimant argues that the facts as shown at the hearing establish his right to recover from the State, citing certain authorities which we will briefly review.

In *Maloney* v. *State, 22 C.C.R. 567* (1957), the mental patient who caused the injury was in the physical presence of two of the hospital attendants when the patient attacked a visitor, causing the visitor personal injury. We found, from the record as a whole, that there was enough negligence on the part of the State and the State's agents to justify an award. We found that the State's agents had sufficient warning of the patient's propensities to have justified their manually removing him from the immediate physical presence of visitors at the hospital. Our opinion in *Maloney,* as stated at page 569, was based on the fact that the patient was obviously disturbed, and was within a few feet of the visiting women, one of whom was injured. We found that this situation, in and of itself, was sufficient to warrant our conclusion that the attendant or attendants, present with the patient, should not have allowed him to attack and injure the claimant. The *Maloney* case is distinguished from the case at bar only in that here there is no showing that any agent, employee, or servant of the State had knowledge of the dangerous situation that did immediately confront the claimant. There is no explanation as to why the patient in the present case was permitted to be in the area of claimant's vehicle, other than the general explanation, that Alton State Hospital has "an open door policy".

In *Callbeck* v. *State of Illinois, 22 C.C.R. 722* (1958), the claimant was an employee at the Illinois State School of Psychiatric Nursing. She lived on the premises of the school. At 10:00 p.m. one night, she was attacked in her

bed and injured by a psychiatric patient. At pages 728 and 729 of the *Callbeck* opinion, we went into considerable detail in pointing out that the patient in that case was indeed a dangerous person due to countless incidents, which had occurred while he was in the charge of the respondent. We concluded that the State is required to exercise reasonable care in restraining and controlling dangerous, insane persons committed to its custody, so that they will not have the opportunity to inflict a foreseeable injury upon others. We said that, in view of the patient's history, it became the duty of the State to exercise utmost viligence in controlling his activities. However, in the *Callbeck* case, there was proof that the attendant on duty allowed the patient to go alone from a ward to the hospital office, and from there to the dining room to await other inmates. The attendant in the *Callbeck* case testified that the patient then was a "pretty good trustee", "one you can trust", and that the attendant had not been given a history on the patient, nor knew his history until after the assault on the claimant. The *Callbeck* case presents a situation where the history of the patient was far more compelling than in the case at bar to force the conclusion that restraints should have been placed upon the patient.

In *Crim* v. *State of Illinois, 24 C.C.R. 202* (1962), three delinquents escaped the Dixon State School at Dixon, Illinois, and one of them destroyed the claimant's barn by burning it down. The parties in that case stipulated to the fact that one of the escapees had a history of delinquency prior to his commitment to the Dixon State School, and that he had been known to set small fires prior to his commitment. He had left the school, on at least one occasion, before the incident in question, and a small fire was discovered beneath one of the institution buildings. One of the escapees in the *Crim* case was

strongly implicated in that prior incident. Similar to the case at bar, the Dixon State School was operated in accordance with accepted standards and practices of institutions of similar type; the school was operated on an "open cottage" principle. The grounds of the Dixon State School were not fenced or regularly patroled.

In the *Crim* case, we cited *Dixon Fruit Company, et al* v. *State, 22 C.C.R. 271*, and concluded that there was evidence ample to justify an award against the State for the damages to claimant's barn and its contents.

In *Dixon Fruit Co.* v. *State of Illinois, 22 C.C.R. 271*, the court again found that the patient causing the damage to the claimant was a mental defective, with an exhibited tendency toward incendiarism, and should not have been allowed to wander at will without supervision in an institution where there were no restraining laws, or other means of controlling his movements. We found, on the basis of the preceding fact, that the State was negligent.

Both the *Dixon Fruit Company* case and the *Crim* case are sufficient authority to justify an award in the present case. As we discussed in the fact situation above, there was ample evidence in this record to the effect that the inmate, Willy Ellis, had a history of violent activities and had on at least one occasion, other than the occasion in question, escaped from Alton State Hospital.

There is no suggestion in the record that the claimant was in any manner guilty of contributory negligence.

The claimant proved by his exhibits, that he paid towing bills in the sum of $22.50, and the reasonable cost of repairing his vehicle for the damage done totalled $854.80. We find that claimant is entitled to an award to

cover the total amount of his property damages in the sum of $877.30.

Claimant is hereby awarded the sum of $877.30.